Good morning. Please be seated. We're here for the bank argument in Aircraft Services Int'l v. Working Washington. Counsel ready? Yes, sir. You may proceed. May it please the Court. My name is David Dean with James N. Hoffman, appearing on behalf of the appellant defendants. My goal is to reserve five to ten minutes for rebuttal. The issue before you today is whether to recognize a new, broad exception to the Norris-LaGuardia Act. That exception would empower courts to enjoin non-union employees in the Why isn't it a case about a new, broad exception to the Railway Labor Act allowing a broad exception for non-unionized employees? Why isn't that just as good a way to describe it? There has never been an injunction of non-unrepresented employees under the Railway Labor Act. There's never been any recognized exception under the Norris-LaGuardia Act. We don't seem to have any real precedent on either side of the case, actually. Actually, there is precedent, particularly for the question of whether or not two-first applies. And by two-first, I mean 45 U.S.C. 152 first applies to unrepresented employees. Williams' Supreme Court case would be probably the first in that line, saying that, in fact, what two-first applies to is collectively bargained agreements and collective bargaining, not to unrepresented employees and their employment agreements. But the question was different. Whatever the proper rationale might be for some new exception to the Norris-LaGuardia Act, the ones that have been brought forward have been grounded in a broad reading of Section 2.1. Right now, what you have, first of all, let me just say, I mean, there are two recognized exceptions to the broad prohibitions in the Norris-LaGuardia Act, although it's clear that Congress, through the Norris-LaGuardia Act, intended to take federal courts out of the labor injunction business. And the first, Your Honor, we are challenging this injunction primarily on the section regarding the responsibility to engage in reasonable negotiation with the section. The first, Your Honor, we are challenging this injunction principally on the basis of that part of the Act that withdraws jurisdiction from district courts to enjoin concerted activity, either or encourage someone else to engage in concerted activity. Counsel, aren't you asking us to read a word into 152 first that doesn't exist? You want us to insert the word unionized employees or representatives, right? And that word doesn't appear in the statute. It says employees of the carrier. And these are employees of the carrier, are they not? They are, Your Honor. The Supreme Court has already read that word in, and it did so in response to the amendments to the Act in 1934, which inserted for the first time a majoritarian requirement for representation. And essentially the role when we talk about a representative under the Railway Labor Act, because of that majoritarian requirement in Section 2-4, you're talking about someone who or an entity usually that will step forward and be responsible for an entire bargaining unit and be able to bind members of the bargaining unit who aren't interested necessarily in that particular issue or may disagree with the position of the collective bargaining representative. My question is under the statute, these discriminal employees could not have designated a representative from Working Washington to be their spokesperson to deal with management? They could have asked Working Washington to be a spokesperson. They had no interest in being – That's not the question. The question is what does the statute contemplate? And I don't see anything in the statute that says it has to be a union representative. There's nothing in the statute that says it has to be a union representative. The word in steel in the Supreme Court case says that you read the word representative in the Act to mean collective bargaining representative, and steel articulates exactly what the duties of that representative are. And that's different than just an agent, which I took your question to mean. Well, as I understand it, the dispute here was over safety in the workplace and the discharge without cause of – I can't pronounce the name. Popescu. Popescu. Why couldn't they designate someone from – It's Popescu. Popescu. Why couldn't they designate someone from Working Washington to be their representative to deal with management just on those two issues under the wording of the statute? That would not have been a – They could have designated an agent to speak for them, that is whichever employees, individual employees, were interested in having the spokesperson the same way that they could have hired an attorney to speak for them. But that would not have been, under the terms of the statute, a collective bargaining representative. The employer didn't talk to them when they initially went to them. They wouldn't have had to talk to that person either, right? Correct. The company refused to talk with the employees individually or as a group. Somebody had shown up and said, I'm talking to everybody, and there's no indication that it would have been any different. That's absolutely correct. I think it's a futile gesture. Except the mediation board could make them. I'm sorry? The mediation board could make them. Actually, what struck me reading this was, Working Washington purports to represent the ASIG employees, even though they've never voted that it should. It's called a strike, even though we don't have the kind of supervised strike vote that either a union would be required to have or an entity under the Railway Labor Act. It struck me, you could have a competing fuel corporation that wanted to get the business away from ASIG, and it could find a couple of friendly employees, promise them promotions and higher pay, and organize a strike that would actually be on behalf of the competing employer, and there would be no mediation, no way to protect the port from a shutdown, even though the Railway Labor Act is supposed to be able to protect ports from shutdowns. I mean, just because Working Washington says it represents the employees doesn't mean it actually does. We don't know if it does. They haven't elected it. Working Washington has never said that it represents the employees  Well, it purports to speak for them in calling a strike. Working Washington did not call a strike. A strike was never called. There was a press conference to announce that there was going to be a strike. Yes, the fuelers showed up. The employees showed up and announced that some employees had taken The employees at Working Washington. I read the records and it was Working Washington. Working Washington organized the press conference. Working Washington is a local advocacy group that works with a number of employees of different contractors and generally tries to work for what they call a fair economy at Sea-Tac Airport. It's just an advocacy group. Why wouldn't they be representative under 152? 152 first doesn't speak to representatives. First representatives is on 152 second and it refers to majoritary and collective bargaining representatives. Can you talk about what happened to the National Media Issues Board? I understand the adoption was entered before that, correct? Yes. Somebody went to the National Media Issues Board and said I would like to be the representative. We didn't know we were under the railroad at that time. But since it appears we are, six of us are people who would like to be the representative. And the board said something like, no, you have to have a nationwide vote of effective employees. Is that what it referred to? No, Your Honor. I think effectively the same thing. Let me put it first. You put letters in the record that say that. That's probably where I'm wrong. Okay. The letter that you're talking about was written by six of the fuelers to the mediation board saying we have no interest in being represented by a collective bargaining representative. We speak only for ourselves. Therefore, if we have to have somebody who negotiates with the employers, we would like to be those people. And the board says, sorry, we don't deal with these individuals. You have to have a nationwide vote of effective employees to have a certified representative. Is that what the board said? Close, but not quite, Your Honor. What the board said was we don't deal with individuals. You're individuals. We don't deal with groups. You're a group of individuals. We deal with collective bargaining representatives. You didn't say that. I thought you said that. I wanted to ask a question. You still haven't answered my question. What would they have had to do to get the board certified representative? Yes. What would they have had to do to get somebody certified from the board? If they had to. If they had to. If that's a common issue where they're working in Washington to be a representative. Sure. As I understand it, there's a procedure to become a certified representative. Yes, Your Honor. How do you do that? What you need to do is get what's called a showing of interest, which would be authorization cards saying we employees designate you as our representative. And for the ACIG fuelers, what that would require would be getting such authorization cards from approximately 50 different airports where ACIG. Right. Not just CK. Correct. Why would it have to? Did it say? It would have to organize nationwide in order to have, whether you call it a union or otherwise, you'd have to organize nationwide in order to have a certified representative that could use the RRA mediation process.  Fair? Yes. I don't remember it saying nationwide. Could you read the text? What we did was cite you to the opinion of the National Mediation Board when ACIG employers at LAX attempted to come forward and say we would like to have a bargaining unit just at LAX. I know that. I just asked you to read the text of the letter. I don't recall the word nationwide. The Mediation Board, that's why I was trying to clarify the record. I think effectively what Judge Hurwitz is saying is correct. That is, the Board said you need a collective bargaining representative. Maybe. In the other case, they said it needs to be nationwide. I'd just like to hear the text because I must have missed a word. So just read the text so that I know whether the word effectively is true. I don't think the word nationwide or systemwide does not appear in the letter that the Mediation Board wrote to these six fuelers. Yes, for individuals. It said we don't have any interest in representation. Correct. Almost. Now, if the employer voluntarily does recognize this. Where is that written? I'm sorry. Where is that written? Your deed was just burson. That's a correct statement of the law.     I'm just wondering where you get it. I'm sorry. I'm just wondering where you get it. Which part of the answer, Your Honor? The nationwide part. That has to be a nationwide group. Yes. Yes. They call it systemwide crafts or classes. It's based on actual carriers, either rail or air, although it also applies to contractors. So pilots at American Airlines, for example, can't organize just the ones in Boston. They organize the pilots at American Airlines. I'm sorry. I asked you a question, and you never answered me. Judge Friedland suggested an answer, and you sort of agreed with her. Yes. Is that your answer? Yes. So your authority for this is in a letter written by the board in a. . . No. No, no, no. She's talking about it differently. I'm asking you a question. Okay. And the question is, what do you rely on for the concept that you have to have a nationwide group? I mean, if this is what Judge Friedland said, that's fine. I just want to know what your answer is. My answer is the decision that Judge Friedland was referring to, which is not the letter that the mediation board wrote back to the six employees who had no interest in collective bargaining. It's the decision that they made when the employees at LAX came to us. Where is that written? Where is that? That decision? I will provide the site for you. Go ahead. That's what I'm asking. It's 40 NMB 43. But that decision was last 35 years. Correct. I mean, this was not a one-shot decision. This was simply said, this is what we always do. Yes. And we always do it. Yes. But your letter, I just found it, it doesn't say that. Your letter just says that their mediation services are provided to carriers and the designated bargaining representatives of their employees. These services are not offered to individuals or groups of individuals. And that's all he wrote. So it looks from here as though all you had to do was get the ASIG employees to choose a representative. Just the way if the employer was, say, a 150-person partnership, they couldn't all troop into the mediation office. They'd have to pick a representative of the 150-partner employer. No, Your Honor. That letter that you keep referring to was not requesting that those employees be a collective bargaining representative. Is it also true that the ADR provisions with regards to grievances are only available with regards to in violation of the collective bargaining agreement and there isn't one? I'm quite excited about everything else. I'm not a congenarist. The ADR services are only available to collective bargaining representatives and carriers. Mr. Dean, I wonder if I could ---- It's also true that this would be a class of grievance if there were a grievance. But it's not a grievance because a grievance under Hawaii Airlines v. NARS has to be from by a ---- has to be related to a collective bargaining agreement and there isn't one. Correct. Mr. Dean, let's go back to 152 first. And it seems to me that the center of your argument is the assumption that that provision is merely cordatory. In other words, it does not create an independent duty. Do I understand that correctly? No, Your Honor. Chicago Northwestern Rail was the Supreme Court case in which it precisely analyzed what the duty was under Section 21st. And what it said was that it was a duty to proceed ---- it was tied to the dispute absent bad faith. And it cautioned strongly against reading any further duty into that. Well, they also said that to the extent that the parties in that case were relying on M.K.T., that M.K.T. cannot bear the weight that the Court of Appeals thought to place on it. And going back, the actual language is that 21st was designed to be a legal obligation enforceable by whatever appropriate means might be developed on a case-by-case basis. Isn't that what we have here? No. Because, as it says elsewhere in that same opinion, the scope of the duty is tied to the other RLA procedures. That is, it is precisely to proceed through those procedures absent bad faith. And it cites to Judge Magruder's definition of that, which is essentially to say going through those procedures with a desire not to reach an agreement or resolve the dispute. And it cautions against expanding that duty because it would open the doors to the kind of But the RLA is an exception in any event, is it not? No. There's no broad exception for Railway Labor Act matters to the Norris LaGuardia Act. The Norris LaGuardia Act has been accommodated to specific, clear, essential mandates of the Railway Labor Act. For example, the command to not interfere with the other party's choice of representative. For example, secondary activity is not allowed because there's no prohibition in the RLA. That's the Burlington Northern case in the Supreme Court precisely held that secondary activity was allowed under the Railway Labor Act because there's no exception to enjoin it. Essentially, these are essential positions. But this whole dispute is just outside the scope. And that has downside consequences for the employees as well. I mean, they can get fired. Not quite. I would say that this dispute is completely outside the dispute resolution procedures of the act. They're not protected by the statute. They can't get fired. No. Why? Because the statute applies to these individuals. For example, the provisions in Section 23rd and 24th that protect their right to designate a representative should they so choose to do one, which they're not interested to do. But even an unlawful strike under the Railway Labor Act, the strikers remain employees. So these employees could certainly be permanently replaced. You can't say you're outside the Railway Labor Act and, therefore, the NARSA or the ADA applies. But in case you strike, you can't be fired because you're protected by the Railway Labor Act. It strikes me as I think the right answer to Judge Burton's question is yes, they can be fired. Because if they can't, then I've got trouble with the rest of you. Well, I understand. I think I am. How can you contend you're outside the act because the act only allows the unionized activity, but none of us are protected by the act? Where do I find that in the act? There are multiple provisions in the act. Why do you have to fire anyone? Pardon? Why do you have to fire anyone? Why are you protected by the statute if you're doing something that's not part of the statute at all? It's not covered by the dispute resolution procedures of the act. Don't forget your closure question. It's covered by the definition of employee. You're an employee, but you're not firing one of us. So what are you covered by? What are you protected by? There's no statutory protection for unlawful and unauthorized or unassertive activity. So what are you protected by? There is case law to the effect that even in an unlawful strike, which is to say outside the dispute procedures in violation of the collective bargaining agreement and violation of the dispute procedures, you remain an employee. And so you can be permanently replaced but not fired. Is there case law that says that people who are not part of the collective bargaining agreement, which is to say ununionized employees, are protected by the Railway Labor Act when they strike? If so, cite me that case. There is no case in this area. There is no case. Just tell me what part of the statute says that to you. I would point to the definition of employee. If that's your position, then don't you lose on your essential argument that the definition of employee in the statute we're talking about today excludes you? Why would we say the definition of employee includes you in the rest of the statute but excludes you in the provision that I'm talking about? Texas right to me is a terribly inconsistent position. I think if you look at the Supreme Court's decision in Burlington Northern in particular. I looked at all those. They don't have any position at all, as you said. Well, I was going to suggest Missouri-Kansas-Texas Railroad, which basically says on the face of the act it's obviously comprehensive. It's meant to apply comprehensively. But in terms of judicial and administrative procedures, it's narrow. It's not comprehensive. It doesn't apply to this. What the Supreme Court said in MKT, and obviously this Court can read it itself, but what the Supreme Court said in Missouri-Kansas-Texas Railroad is that while the act is comprehensive, the dispute procedures are not, and the legal and administrative procedures are not, and that the Norris-LaGuardia Act only has to be accommodated for those. First of all, I thought you said in your briefing that yes, you can get fired. I thought that's what you said. I'm sorry, Your Honor. I thought you affirmatively said in your briefing or petition for your hearing that in fact these employees could be fired. Could be fired? I don't believe so, Your Honor. And if not, then you have them being employees. If they are, but a certain interest in a great deal of your argument that the provisions of the employees they're talking about in the statute are represented as employees or people who want to be represented. You have a whole section in your petition. Maybe you could write it. That's what I said. I, I, I, these employees have no interest in being represented. These employees are employees at will. They are, there is no RLA constraint on the employer in terms of how it deals with them generally. It, it has not subjected itself to any of the limitations of the act, yet it is asking to take away the only weapon that unrepresented employees have to deal with their employer. But you're telling us they have that weapon. You're telling us that if they don't show up for work, they can't be fired. I, I, they can be permanent. They can be permanently replaced instead. That's right. Typically it would mean that you would be on some sort of preferential hiring list. If the person wanted to hire you. To no, I don't think so. Not that I'm aware. No, I, I, we could win on that narrow basis. I absolutely believe that the Section 8 would have, did require the company to try to meet with the employees and resolve the dispute. If, if, and we should win on that basis. But I would urge the court not to rule on simply that narrow basis. Send us back and have ASIC sit down with its employees and then go, the employees say the same thing. And then we go back to Robart and get the same injunction and start this whole process over again. When trial court judges are faced with these kind of disputes, there's enormous pressure. Inevitably the employer is going to say economic. Why should we care about that? We are a court of law. We resolve legal issues. I mean, the fact that a narrow result would be less beneficial to your clients is, why should that be of any interest to us? Isn't, isn't the rule that, or the default rule that we decide cases on the narrowest ground available? And isn't the argument to which Judge Berzin and Judge Freeland have referred, the Section 8 argument, isn't that the narrowest ground for us to decide the case on? I believe it is the narrowest ground you could decide the case on. Is there any principled reason why we should reach out and decide a much broader question? I, I, in order that we not end up here two years later in exactly the same posture. You don't like this? My, my, my, my client. We'd love to see you again. My client has been enjoined for two years from doing something that they should have been able to do, and this is an injunction that's still in search of a rationale under the Railway Labor Act. That's a personal issue for your clients. I would argue it's a question of justice. We're not a court of justice. We're a court of law. I mean, we're sitting in bank, and we're not a district court. We're essentially a court of law. Is there some reason in policy, and I'm not, I don't mean to harp on this issue, but there may be policy reasons why you think deciding the broader question is the more appropriate way to, to resolve the case. I'm just telling you, I can't speak for my colleagues, but at least for myself, the fact that this creates more problems for you or your client in this case doesn't cut much ice. But there may, in fact, be, you know, law and other, you know, some reason we should decide on the broader ground, and so you should tell us what that is. When this court was faced with a Norris LaGuardia Act question in bank in the Burlington Santa Fe case, it took the opportunity to rehearse the history of the Act and declare in no uncertain terms that the definition of labor dispute under the Norris LaGuardia Act was broad. This is an opportunity to assert that the definition of, or the prohibition on labor injunctions under the Norris LaGuardia Act means what it says and is, and give guidance thereby to the trial courts. It's equal opportunity to say that employers need to bargain in good faith and that, and I'm not telling you what the result is in this particular case, but that seems like an important issue as well. What it requires of an employer before they go into court seeking a remedy is what they need to do vis-à-vis employees to be acting in good faith. That strikes me as an important issue as well. Section 8 has two sections to it. One is the mandate to negotiate voluntarily. The other is to comply with the law. If this court finds that two-first imposes some obligation on these parties, I would urge that it's a symmetrical obligation of something like bargaining in good faith, and that would be one way to resolve the case. Could I reserve my time? Yes. I agree there are other pieces, and I would like to reserve the remainder of my time, if I may. Thank you. We'll hear from the other side. May it please the Court. My name is Douglas Hall. I'm a law firm of Ford Harrison on behalf of ASIG. The defendants position in this case that employees subject to the RLA who are not represented by a collective bargaining representative may strike at any time and for any reason with no limitation or anything anti-preliminary steps as envisioned by the Act. It's not for any reason. For example, they can't strike if they're seeking to be in the representative of an employee. That's not the defendant's position. On a footnote, they – I think it is the defendant's position because they maintain that they're not seeking to be represented. In other words, you need something that is a dispute covered by the statute in some fashion as to which there is some kind of statutory remedy or process.  You'll need a mandate. You need a mandate or command of the RLA. And 2 First, we believe, is that. So their position is that Section 2 First just floats off by itself. And the fact that there is nothing – no process of the statute that would apply to this judgment. Well, we do believe that there is a – There's no consensus to your position. There are other side positions in this case that there's something specific they should have done. Right. There is. It's both. First of all, we believe Section 2 First – Well, they're not the same, so it can't be both. Well, 2 First is in and of itself an enforceable duty that they – that employees must – of a carrier must exert every reasonable effort to settle all disputes. I have a question about that. Yes. Because if you read Section 152 First in its entirety as being mandatory, it also says that it's the duty of the employees to make every reasonable effort to maintain – make and maintain a collective bargaining agreement. So is it your view that there's something illegal about not seeking to unionize? No. Because the remainder of the – of the Warren-Lake Act protects people against forced unionization. So it seems to me that your reading of 152 First is untenable if it's untethered to the remainder of the chapter. No. We don't believe that at all. I believe the obligation to make and maintain agreements is something that is unique to the represented employees. That doesn't mean that the – But then you're trying to have it both ways, too, which is something that my colleagues were questioning opposing counsel about. Because what you're saying is that, well, the first half of the sentence doesn't apply to non-union employees who don't wish to unionize, but the second half of the same sentence applies to them. And I don't see how that's possible. I believe that's a fair reading of the – of the section. It applies to both represented and unrepresented employees. Their burdens are different depending where they are, whether they're represented or unrepresented. Okay. Can I return you to Section 8? Sure. Section 8 requires you to engage in reasonable measures before seeking to negotiate. Requires negotiation or use of governmental arbitration means. Okay. Fair enough. And your response to that, as I understand it, is, well, until the employees can utilize the RLA procedures, we don't have to do anything at all. And that fairs some degree of the position? Well, without them doing so, who do we negotiate with? So the answer to my question is yes. The answer to your question is yes. I don't see – I don't see why you need that, counsel. It looks to me, when I read 152 first, as though the duty is bilateral. It says it shall be the duty of all carriers as well as it shall be the duty of all employees to settle all disputes and avoid interruption of commerce. Correct. So it looks as though treating the RLA as something that applies to carriers in interstate commerce such as it does. Section 8 of the Norris-LaGuardia Act really doesn't come into it. You've got a similar duty under the Railway Labor Act. The Railway Labor Act then says, what if somebody doesn't do their duty? Well, it looks to me as though the National Mediation Board can make them do it, whether it's the employer or the employee. Both of them have to pick representatives. My hypothetical 150-person partnership and my hypothetical employees who may have been subverted by a competitor rather than somebody looking out for their interests or subverted by somebody else not looking out for their general interests, whoever they are, they're forced to pick a representative. There's a process by which they're supposed to pick it, and then they're forced to mediate whether they like it or not. So I don't see why you need or are taking your position that until they pick a representative, your client can just stand with its arms folded and not talk to them. It looks like your client has to try, and if your client doesn't try, the National Mediation Board has to mediate. Well, the NMB really wouldn't have the ability to do that on its own, sui sponte. Who can ask you to? The process... Who can ask you to? I'm sorry, who can ask me to? Judge Quantifield says, Judge Quantifield has suggested that the CTAC employees should get together... Yes. ...pick a certified representative on their own... Yes. ...and get the NMB to force you to go to mediation. That's correct. Do you agree with that position? Yes. So if they do mediate... Well, on their own. On their own. Just the CTAC. Just the CTAC? Well, that depends. No, no. It doesn't matter. It depends because there are cases, contrary to what my opponent said, where the NMB has... That's your client's position because we can shortcut this problem to students. They're perfectly happy, the other 50 people there, to pick somebody to represent them in a discussion with you. That would be up to the NMB. No, no. I'm asking you. You can always... Our position would be that that would not be appropriate. Okay. Thank you. But that would be up to the NMB, and they tried that in Los Angeles. My question is very different. If these people designated somebody from the CTAC group to sit down and negotiate or talk with you, would you sit down and talk with that person? Absent certification? Absent an order by somebody. I believe we could not because 2-4th requires that we deal, and 2-9th requires that we deal with someone. We could voluntarily recognize someone. But I'm not saying we would not. Your brief says... I don't believe our brief says that. At least we don't have a legal obligation to do that. What you're asking me is a hypothetical... In your answer to Judge Hurwitz's question earlier, I understood to say that you would not be willing to recognize those representatives voluntarily. Is that your client's position? Our client's position is we would not voluntarily recognize them. No one has asked us, so it's a hypothetical question. It's a mediation. That's the only problem. I bet you the mediator can solve it in 15 minutes. They'll pick somebody, and they'll have them sit down. Well, according to them, these people aren't interested in having a representative, so this is getting far afield. Let's say you're wrong. Let's hypothesize. Sure. You know, we don't know what we're going to wind up doing, but let's just assume hypothetically that you're wrong on this and that ASIC had a duty to try to negotiate even though there wasn't a selected representative to negotiate with. They had a duty, and they breached it and violated the statute. Why would your case depend on you being right on that? It looks to me as though you could be wrong. And the Railway Labor Act still tries to protect interstate commerce from strikes at ports by saying if you don't do your duty, we'll make you go through this process, and a court can enjoin strikes, and it can also enjoin shutdowns. If you decide that these employees are just a big nuisance for you, and you're going to do a shutdown until you starve them out, it can enjoin ASIC as well. Even though injunctions would be barred in other areas of labor law by the Norris LaGuardia Act, this shutdown of ports is just a different animal under the Railway Labor Act. I think that's right. So why can't you be wrong? Why do you need to maintain this position that you don't have to meet with them? Well, as a lawyer, I would like to have backup positions. I think in either situation, I think we would be appropriate. I understand that. I understand that. So why don't you run to Section 8 of the Norris LaGuardia Act? I'm sorry? Why don't you run directly to Section 8 of the Norris LaGuardia Act? Well. It has the same requirement except that it's forgiven against an injunction. Again, in this case, I think there was no violation, even assuming that we had an obligation under Section 8. Why can't you judge time-frames construction, i.e., would you get an injunction against a strike if you, in fact, had violated both Section 2 first and had not complied with Section 8 of the Norris LaGuardia Act because you hadn't negotiated what you could have? There are cases, United v. IM out of the Seventh Circuit, that said that Section. . . Everybody else has otherwise. He was clearly going to say otherwise. Let's assume you couldn't because of unclean hands. Couldn't the employees get an injunction under the Railway Labor Act if they had a representative?  If they had a representative, yes. They certainly could. If the act is requiring that employees before they can take concerted action, non-EMS employees must choose a representative that will be recognized by the National Mediation Board. If by concerted action you're referring to work, stop, and destroy. . . Yes. That is our position. And tell me where that is in the act. That is in 2 first. That's where we find that. So you think. . . And the overall scope and purpose of the act. . . And I realize both sides are arguing for the honesty of the act. Now. But do you think it's 2 first that requires them to pick a certified representative that the National Mediation Board will recognize? You have to go through the major. . . Yes. You have to go through the major dispute processes in order to. . . What we handle for the major dispute processes until they have a union. . . Correct. Therefore, what you're really saying is they have to go through the representation processes of the board, get a certified representative, then go through the major dispute processes, right? Yes. Which will take. . . I don't know. . . Again, it's impossible if it isn't. . . I mean, certainly that doesn't solve this dispute. There's no way that's going to be a responsible dispute. Is that right? Well, by which. . . Well, that's what generated this problem, I hope. Well, we have a difference of what the dispute is. Our dispute is they're trying to force us to negotiate someone we have no legal obligation to negotiate with. Well, let's go back, because I appreciate your position on this. They have to go through this process first to get a certified representative. Before you. . . So is. . . I want to go back to my original question. Assuming that while they're going through that process, if they wanted to, did you have no requirement under Section 8 to sit down and talk with them? Do you have to wait for that process to go through? Section 8 of North Subordia. . . North Subordia says before you can get an injunction. You must undertake what's called reasonable negotiation. It's not exactly. . . And what you're saying is, well, we'll do that once they have a certified representative. Well, we'll sit down pursuant to 2 first. It's what they do under 2. You don't have to do it. Isn't that your position? Our position is that unless and until they have a certified representative. . . There's no one we have. There's no one we know to be. . . There's no one we know to be. . . The representative of the majority. I have a question about that. Because there was some discussion with the opposing counsel about whether CTEC alone could. . . Employees could choose a representative. And I think perhaps once you've thought on this, the statutory text of 152.4 is the source of this nationwide issue. Because it says the majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. And isn't it that sentence that's been interpreted to preclude a mandatory certification in one locality? I was with you after you said preclude. The NMB's interpretation of that pursuant to its authority is in most cases. But if that's the case. It will be system-wide. That's the statutory. That is the statutory basis. I don't see why the representative even has to be certified. 152.3 requires designation of a representative, but it doesn't say certified. That's in 2.9, Your Honor. Certification doesn't come up until 152.9. Right. 2.9 is where it talks about if there's a dispute. But that only applies where there's dispute. Right. So if some employees want to be represented by the Teamsters, some by the SEIU or whatever, and there's a dispute, then the board certifies a representative under the 152.9. Well, it's not just if they want separate unions. It's also if some employees want unions and some don't. There could be any kind of dispute. But let's say you've got 50 people that work for a corporation that does business in Seattle. Okay. And they designate a representative, and there's no dispute among the employees about who the representative is. Maybe it's working Washington, an advocacy group. Maybe it's a lawyer who practices labor law on their side. I don't see where they need any kind of certification. And if the company felt that this was indeed the wishes of the majority, it could voluntarily recognize them. Let's not play games with the words here, because it's important to understand the position. Sure. Judge Kleinfeld asked an important question. Yeah. Let's assume that these guys got together and designated working Washington as their spokesperson, their representative, and they came to you and said we'd like to talk. Because I understand your position, which is we would not talk. I have to say it depends, because we would need to know that this is really their wishes. And absent the staff, absent ‑‑ And you know that unless there was a cultural thing, I mean, and we wouldn't allow that. Not always. ASIC has voluntarily recognized unions at locations throughout the country. Judge, if this is a realistic possibility, then we should go to Judge Hurwitz's suggestion. We should send this off to mediation. They will choose whether their company should be a representative, and the whole problem will be over. But then you'd be overstepping the role of the National Mediation Board. We don't ‑‑ You won't recognize that person. I'm saying that if there was a situation where someone, that the employees came to us and we actually felt there was a group, an individual that ‑‑ I'm not going to go to mediation to survey everybody. I'm voting against it. Well, that's the problem. We don't know. Ask it again. That's why there's generally ‑‑ I don't actually see why your feelings about the representative matter, because you're the employer. And 152 9th says, if any dispute shall arise among a carrier's employees as to who are the representatives. ASIC is not one of the employees, so who cares if they dispute it? It's still a representation dispute, as the NMB has defined it. That is still ‑‑ Just so we're clear, because I know you need to maintain escape routes here. But as far as I understand the briefing, what your position has been is you guys are stuck in the authority process on this. And until you come out of the authority process with the NMB telling us who to talk to, we've done all we have to do to satisfy Section 8. Fair? To satisfy Section 8. Section 8 is unrelated to the Railroad Labor Acts. I mean, they're similar. And Section 2. Yes. I would agree with that. And we need to do nothing more. We have to ‑‑ we can sit back and wait until this injunction is made in place for a long time. It's preliminary. The judge will have to at some point decide whether it goes farther. Until this unspecified process inside the National Mediation Board tells us who to talk to. Fair? Well, and even after that, if they unsuccessfully tried to organize under the Railway Labor Act, I don't think that would give them the right to strike. National Mediation Board says, sorry, you haven't organized. So we don't have what we call a certified rep. Your position is that we need not talk to anyone. As a matter of law, correct. As a matter of good business, we likely would. And people talk to them all the time. As a matter of law, your position is that we need not talk to them. We would not be obligated to speak to them. Okay. How would that have been conceivable with the Supreme Court's decision to leave out interpreting Section 8? Well, because there, what the issue was, was whether they had to do more than one of the processes in Section 8. They did negotiate. No. No, it was required by the statute. Because what they did there is they negotiated. And they said, that's enough. This other issue of arbitration, governmentally available arbitration and mediation, we don't need to do that because we've established that we've done one of the three things. And the court said, no, no, you have arbitration available to you. These are conjunctive, not disjunctive. It was voluntary. And that's what I think is a good analogy to hear. The defendants are arguing, you're forcing us to do unionization. We're not. But you can't take advantage of the benefits of unionization, i.e., striking, until you do so. Just like Toledo and Peoria couldn't take advantage of Section 8 because they didn't take advantage of the voluntary arbitration. It says sell all disputes without interruption to commerce. I'm sorry? It says interruption to commerce or operation of any carrier. It says in an effort to avoid it. But it doesn't say. It doesn't say. It's not an absolute prohibition on striking. That's right. So where is the prohibition of striking at? Well, it's not an absolute prohibition. I think where Two First conflicts. So where is the prohibition in the reliance? It's in Two First. And where Two First conflicts with other parts of the statute, such as the major dispute procedures, and that was in Burlington Northern, they said Two First can't override, that when you get to the end of these procedures, you have the full panoply of self-help available to you. Counsel, you and your opposing counsel obviously have different interpretations of Two First, but both of you seem to be relying on Chicago and Northwestern. Yes. I thought that was interesting. Help us figure that out. Well, I wish I could because I didn't really see them emphasized again until their en banc brief. They barely mentioned it. They didn't mention it at all before the district court, and they barely mentioned it to their initial briefs to the panel. To me, Chicago and Northwest is very useful to us. I don't see the gloss that my esteemed colleague is putting on it that says this can only, Two First only arises in the context of carrying out one of the procedures. Now, in that particular case, it was in the context of a major dispute procedure, but I don't read anything in there that says other than what it says, which is this is a command enforceable and important. It reiterates this is the heart of the act. It's central to its action. But it doesn't command no strikes. In fact, Chicago and Northwestern contemplates strikes and says strike injunctions may issue when it's the only thing practical. Well, they wouldn't be talking about injunctions of addressing strikes unless there were strikes contemplated as a possibility. And they don't make injunctions mandatory. They say weighty considerations counsel restraint in the issuance of injunctions. Under current law, unquestionably, the four-part test would apply and the district court might decide it wasn't really that bad for the public interest and the employer was a real hard head and mediation had been tried and the employer wouldn't play ball and strike is fine. It looks like it can go either way. There can be strikes. In our view, the strikes are when the major dispute procedures have been exhausted or in the usual case where the carrier itself is not engaged in the appropriate procedures under the act. There's a case in the Second Circuit that's in our brief where the after certification of the company just refused to deal with them at all in violation of 2-9th. And that was held to give rise to a right to strike. But that's not what we have here. Counsel, did the district court consider Section 8 at all? I don't believe so. So we had a lot of discussion today about what the reasonable efforts were made, but there really is no record to support that. Is that correct? Well, the record, I think, is clear as to what happened. And I think I thank you for bringing this up because I really want to make sure because there seemed to be some throwing around of what was actually happening. Mr. Popescu was not fired. At the time, he was under a suspension pending investigation of some misconduct. Counsel, I'm sorry to interrupt. Sure. We're running out of time. Yeah. To make a determination whether reasonable efforts were exercised by the employer in this case, don't we need the district court to make some findings, whether it's affidavits from various parties or some? Right now, we have nothing to do with that. Well, there are affidavits from the parties in the record. But in terms of the district court looking at that to make a determination of reasonable efforts, right now, we have nothing to review on this. Is that correct? He did find that the Norris LaGuardia didn't bar the injunction. I don't believe he ruled on Section 8. I still think this court could, on the record before it, find that Section 8 was satisfied in this case. Given what defendants themselves say happened, which was people called up HR in the middle of their investigation of this issue saying, put this guy back to work or else. And then we get a strike notice saying, put this guy back or else. There was no overture to negotiate. There was no one really to negotiate with. We negotiated with 80 different fuelers, with 80 different positions on Alex Popescu. But you also told us that the problem is you're taking a whole bunch of mutually exclusive positions. Because ultimately, then you said that if they had designated somebody, we would have talked to them anyway. We had no obligation to. We had no obligation to. That's different than saying that they had. It had. If the district court had denied the injunction, you would have fired them, wouldn't you? Yes. You started your argument, and you didn't get very far, but you said that we have to consider in this case whether they have a right to strike. But that's really not before us at all, is it? The question of whether employees have a right to strike or not is not really something we can or need to decide. You can decide on more narrow grounds, whether in this particular case. But, no, it's not really before us. I mean, we can decide whether or not there is authority to issue an injunction against a strike. Yes, that's right. But the fact that we may not have authority to enjoin it doesn't mean the strike is legal. That's correct. So we do not, in fact, have to rule on the legality of any strike. I mean, it's just not presented. It's relevant to the likelihood of success on the merits. Only if we have authority. I'm sorry? Only if we have authority to enjoin. There's no weighing of factors. There's no looking at anything if we don't have authority. If we're barred by North LaGuardia from enjoining the strike, there's nothing to weigh. There's nothing to look at. There's nothing to rule on. Well, you have to – obviously, you have to, as the courts have said numerous times, you have to accommodate the North LaGuardia Act with the Railway Labor Act. And as the Court said in Chicago and Northwest, the more specific section of Two Firsts, Section 2 First, takes precedence over the North LaGuardia Act. I want to clarify. What is your more specific section, Section 2 First? I'm sorry? What is the more specific section? Section 2 First. It's just not very specific, right? That's Chicago and Northwest River bounded, so Your Honor. No. Chicago and Northwest was relying on the role of Section 2 First and implementing other provisions, having to do with bargaining, and essentially bringing a – then together saying, you know, you can't just go through the motions. Well, I think that the – it's footnote 18, I believe, if I remember correctly. It was talking more generally about how you harmonize the North LaGuardia Act. It said Two Firsts was reenacted in 1934, post-North LaGuardia, and the more specific language of Two Firsts must take precedence over the more general North LaGuardia Act. I don't believe it was specifically limiting that to the facts before it. Counsel, I think although Two Firsts might have been the subject of that particular paragraph, I don't see why it couldn't sit down with a half dozen people under the provision and several provisions of the Railway Labor Act that are parallel to Section 158 in the North LaGuardia Act. For example, in 152 Fourth, there's a proviso that says you can't dock hours because the carrier and that nothing in this chapter shall be construed to prohibit a carrier from permitting an employee individually or local representatives from conferring with management. It looks as though it was plain under the Railway Labor Act, contemplated, that management could sit down with Popescu or the half dozen people of Popescu and his friends and talk with them even though there was no local representative because he uses the word or. Well, we certainly can talk to our employees whenever, but the question is do we have to negotiate and who do we negotiate with? You have six people who are friends of Alex Popescu who want him reinstated and you've got six who were the subject of his incorrect actions who don't. How do we know who we need to speak to in order to carry out this obligation to negotiate? The strike ballot had two questions on it. One, should we strike yes or no? Two, we appoint Rosenblum or whatever it is as our representative. What happens then? Would you have to recommend it? No, because that doesn't have any of the indicia of the secret ballot that the National Mediation Board takes. How do we know what inducements? I mean, first of all, the ballot was anonymous. Who filled these out? Was it really fuelers? Did people stuff the ballot? How would we know that Jonathan Rosenblum, or working Washington, or whoever was designated in your hypothetical, really was the designee of the majority of the employees? And that's what two-fourths requires. There's no reason to have to doubt it. There's no reason to give it any credence. I mean, we didn't oversee the ballot. We had someone coming to us saying, here you go. Accept us at our word. We can't give it to workers, right? Sure. Well, there's a big risk there. Maybe they wouldn't have, but we couldn't take that chance, given the 75% of the flights. Isn't that what happens with union cards? I'm sorry? Isn't that what happens with union cards? Not under the Railway Labor Act. Under the National Labor Relations Act, you can do a card check where you present the cards, but not under the Railway Labor Act. I understand it's under the National. But stuff like that happens all the time, where a group comes with a bunch of cards and says, okay, we have enough signatures here that you need to recognize us. And why wouldn't the same answer apply here? That could be the same. Again, because the Railway Labor Act is different. Under the National Labor Relations Act, it requires an authorization to do that. It can insist on an election. I don't do a lot of NLRA work. It can insist on an election, but it can't just ignore them. It can't just say, go away. We don't trust what you did, and we're going to ignore it. Actually, you can under the Railway Labor Act, because there's no duty to negotiate with anyone who's not been certified. And so in the end, that just kind of suggests in several ways you might talk to the other side. But in the end, your position is, until they go through the procedures to get a certified representative, which is to say, go through the National Labor Relations Act procedures. Railway Labor Act, sir. Railway Labor Act. Okay, fair enough. You have done all you need to do, and you don't choose anybody. Under the law, that's correct. As further as I can't do that because they're not national. They're not a class, and they're not public. That's where I'm – and I don't mean to be mealy-moused with you. We would say – we would oppose it. How many times has the NMB ever – A handful. But this NMB, specifically today, I can't – It's 100 years, right? I'm sorry? 75 years, a handful. A handful of times. So it's not going to happen. But that's a criticism of the act itself. My position is that you're never going to talk to them. But no, no, not necessarily. But, again, if this was Delta Airlines, let's make this a little more concrete, and they had 3,000 flight attendants in Seattle instead, and they're frustrated because they've tried over and over to unionize and have failed. Could they say, well, this isn't available to me because it's majority rule and it has to be nationwide, and I want to organize a unit here in Seattle? No. But that's – they couldn't then strike. But this case is one step further back because they're not trying to organize anything. Well, but they – well, again, the Delta flight attendants, my hypothetical, wouldn't need to be organizing either. They could be trying to strike because they don't like the local conditions of the Delta base in Seattle. Would they be able to do that? I would think not. But under the defendant's theory, they would. Okay. Thank you. Again, I would think they can get fired, but that's another question. The question is can you enjoin them? That's the question. You can answer that question and then sit down if you want to. I've lost the question. Or you can just sit down. I'll sit down now. Thank you very much. Okay. I don't remember you. I think you had a minute and a half. We'll just round it up to two minutes.  Thank you, Your Honor. First, I believe that Your Honor is absolutely correct. This is a question of the court's jurisdiction. And absent a specific mandate in the Railway Labor Act, this court that for some reason the North LaGuardia Act needs to be accommodated to, there is no jurisdiction. Justice Brennan. Is that an initial question? Let's assume for a second that the Railway Labor Act applied. I believe the Railway Labor Act did apply. Okay. Well. But not its dispute procedures or any of its specific mandates. I know. But that is not true. Okay. And you don't have to be enough to fight a fight. It's not called a fight. Okay. Let's assume that it wasn't clear at the beginning whether or not the NMB would be able to speak. And the court said, well, I'm joining so you can go to them to find out whether you can take advantage of that. And they said no, you can't. Is that a jurisdictional question or does it go to the propriety of the injunction? In other words, could a court enter a brief temporary injunction to find out whether or not you could avail yourselves of the mediation procedures of the Railway Act? And then once finding out you couldn't, would it then be obligated to remove the injunction? No, but you're asking us to decide what the Railway Labor Act means before it, in effect, before it finds out what the people in charge of the act say. In this case, the people in charge of the act say sorry about it. So I wonder whether there's a jurisdictional question of whether or not now no one wants to know. I take your point that assuming an ambiguity of the statute, having the mediation board clarify that, in fact, there's no procedure optional or mandatory for unrepresented employees, could have been a wise move by the district court. I believe, however, that for many of the reasons that were articulated in the Burlington Northern Santa Fe case about the effect of labor injunctions on the momentum of a strike, inventing ambiguities in the statute to enjoin strikes is something that Congress was not interested in having the judges do either. On the question about Chicago Northwest, I would just like to focus the court on the part of the decision that talks about the scope of the duty under 2 First, and that's footnotes 11 and 19. And the court is crystal clear about the narrowness of that duty and points in footnote 19 to examples of overreaching under the National Labor Relations Act, under the good faith requirement, and points to the NLRB versus International Insurance Agents case, where the Supreme Court set aside an NLRB intervention or injunction of employees being involved in economic coercion and made crystal clear that the inquiry, the good faith inquiry, doesn't say you don't have economic weapons, you can't use economic weapons. That's per se bad faith. There's some sort of something wrong with employees trying to use their economic muscle to do collective bargaining. The inquiry is simply on the issue of what's happening at the negotiating table. Are you trying to reach an agreement? Counsel, footnote 11 seems to cut against your argument. You're citing it in favor of your position? Absolutely. It says, Parallels should be drawn with the utmost care and with the full awareness of the differences between the two statutory schemes. Yes. What it did was it adopted Doesn't that tell us that the RLA in this sense trumps the NLRA? We're talking about, I'm talking about the Norris LaGuardia Act. It doesn't say that the Railway Labor Act trumps the Norris LaGuardia Act. What it says is we're going to talk about the good faith requirement, which is an explicit statutory requirement in the National Labor Relations Act. We're going to refer to it to give some content to the two first duty. We're going to caution you against thinking that what we're doing is opening up the entire ambit of good faith as it's been litigated or applied under the National Labor Relations Act under the Railway Labor Act. And in fact, we're going to be so careful about articulating it that we're not even going to call it good faith. We're going to call it avoiding bad faith, which we define by reference to an NLRB decision as proceeding or rather a decision under the National Labor Relations Act as going through the process with the desire not to reach an agreement. And that's what we find that it is. Thank you. Pardon? Thank you. Case is argued with 10 submitted. We're adjourned.
judges: KOZINSKI, O'SCANNLAIN, KLEINFELD, SILVERMAN, GRABER, PAEZ, BERZON, TALLMAN, HURWITZ, OWENS, FRIEDLAND